## AS TO USE OF SEWER ACROSS THE LAND OF ANOTHER.

Circuit Court of Summit County.

GEORGE BATES v. GEORGE W. MAGENNIS.

Decided, October 11, 1909.

*Easement—Sewer—No Record Evidence or Actual Notice.*

The mere existence of a private sewer through a man's land which others are using, but of which there is no record evidence and of which he had no knowledge when he purchased the premises, does not give such others a right to continue the use of said sewer without his consent.

*Slabaugh, Seiberling & Huber,* for plaintiff in error.
*Otis, Berry & Otis,* contra.

MARVIN, J.; WINCH, J., and HENRY, J., concur.

The plaintiff is the owner of a lot of land in the city of Akron at the corner of Adolph street and Perkins street, the lot fronting on Adolph avenue. The defendant is the owner of a lot fronting on Good street, in the city of Akron. There are several intervening petitioners in this case, and they severally own lots fronting on Adolph avenue (which is a street running south and north), south of the lot owned by the plaintiff. Good street and Adolph avenue are parallel to each other and are about 400 or 500 feet apart. These several lots are all a part of the same allotment made by Jacob Good, and known as "Good's allotment." This allotment was made in 1872 or thereabouts, and is properly recorded in the records of Summit county. At the time the allotment was made Jacob Good owned all this property, together with many other lots in an allotment. There is now and for many years has been a main sewer extending along the line of Good street. There is also a main sewer in Perkins street. There is no such sewer in Adolph avenue. While Good was the owner of all the lots which are affected by the controversy in this case, he constructed a private sewer in and along Adolph avenue, from a point in front of the plaintiff's lot southerly to a

lot.known as No. 8, in his allotment,.so that it passed along the front of the lots of the intervening petitioners in this case. When it reached lot 8, Good turned it to the west, and carried it across the southerly part of that lot and near the northerly line of the lot owned and held by the defendant Magennis. `The lot of the defendant is known as lot No. 21. These lots crossed by this sewer, as well as the lots fronting on Adolph avenue, which were along the line of this sewer, were all owned by Good at the time he put in the sewer, which is a 6-inch pipe sewer. This sewer crosses to the west across the lots of the defendant Magennis and empties into the main sewer on Good street. The defendant, unless enjoined, will obstruct this sewer crossing his premises so as to prevent sewage from the lots in front of which and along which it runs from being discharged into the sewer in Good street, and the purpose of the suit is to enjoin the defendant from so obstructing this sewer. The deeds from Good to the several purchasers of the lots involved in this suit make no mention of this private sewer, nor is there any record of one. The claim of the plaintiff and the others similarly situated is that the inducement to purchase the several lots owned by them was the existence of this private sewer, and it is urged by them that as Good was the owner of all this property, as he sold off the lots he encumbered the remaining lots. that is the lots remaining in his ownership, with this sewer privilege. It is not, however, seriously urged that the defendant Magennis, who purchased his lot in 1906, from J. Ed. Good, who had purchased it from the heirs of Jacob Good, the original proprietor of all these lots, would take his title subject to the right of the other lot owners to have this sewer maintained, unless he had knowledge of the existence of the sewer. Certainly, if this claim had been seriously urged, it could not be maintained. A perfect abstract of the title of this lot No. 21, owned by Magennis, taken from the records accessible, would have given him no notice of any rights of anybody to maintain a sewer across his lot. It was sought on the part of the plaintiff, however, to show that the defendant had actual notice of the existence of this sewer. We do not discuss at all the proposition of what his rights would

have been, if such actual notice were shown. The only evidence tending to show that he had such notice is the testimony of Mr. Holloway, the acting agent for J. Ed. Good, through whom the defendant negotiated for the purchase of the lot. Holloway says that he said to Magennis that if he should ever want to build a barn on this lot that he thought he would find a sewer already there, and if he wanted to know where that sewer was he had better see J. Ed. Good. Magennis did not remember any such conversation as this; but suppose it took place; supposing Holloway's recollection is right, we hold that it is no such notice to Magennis as should put a careful man upon inquiry to know if there was not a sewer running through his lot which the lot owners on a street entirely away from his lot were entitled to have kept open. It is urged, as evidence, that Magennis must have known about this sewer, because Orgill who built a house for Magennis said something to him about a sewer being through there, and Magennis manifested no surprise about it. This is easily explained by the statement made by Magennis, that some time after he purchased that lot he was told by his wife that a neighbor woman had told her that she believed that there was a sewer across this lot, so that this statement of Orgill was not the first that Magennis ever heard of the sewer. Of course the notice from Orgill coming after the purchase was made, or the notice to Mrs. Magennis, which came after the purchase was made, could not in any way affect Magennis' rights, nor is that claimed, but that only the fact that Magennis did not seem surprised to learn something about a sewer when Orgill spoke about it tends to show that he must have known about it before. So he did to the extent that his wife had told him what the neighbor woman had said. But we hold that the fact, if it be a fact, that Holloway said to Magennis that he thought there was a sewer on the lot through which he could drain from a barn if he might want to erect one on his lot, was not such notice as to charge Magennis with the lien of the easement across this lot for a sewer.

Attention is called to the fact that the sewer connection between Magennis' house and the public sewer on Good street is

made through this sewer.. It appears from the evidence that Magennis contracted with a party to put in this sewer connection from his house to the Good street sewer and that the contractor took advantage of the sewer which he found there and made the connection with it. Certainly this can in nowise entitle the plaintiff or the other lot owners on Adolph avenue to have this portion of the sewer kept open. Besides, it is shown that for a sum not exceeding $450 a sewer can be constructed from the point in this private sewer where it turns from Adolph avenue, to the west and then south, to the main sewer in Forge street.

As to the plaintiff the connection can be made for sewer purposes from his premises to the sewer in Perkins street at no great expense.

We reach the conclusion that the plaintiff and the other property owners have not made a case that clearly entitles them to relief against this defendant, and that it would be inequitable, under the facts here, to encumber the title of the defendant with an easement for this sewer, and the petition of the plaintiff and the several intervening petitioners are dismissed.